## CIRCUIT COURT OF STAFFORD COUNTY

In re Referendum in Accordance
With Section 4-98.12
of the Code of Virginia

January 29, 1973

By JUDGE JOHN A. JAMISON

I have given careful study to the pertinent Code sections which appear to me to control the facts before me and which must govern the Court's decision upon the Complaint filed pursuant to Code Section 4-47.

Before deciding the intended purpose of Section 4-47, we must first read and construe Section 4-45.2, the pertinent part of which reads as follows:

> *In order to determine the validity of any petition filed under Section 4-45*, or under one of the statutes continued by § 4-45.1, the court or judge may, *before calling the election*, refer the petition to a master in chancery for an investigation and report as to (1) the qualification as voters of the county, city or town of the persons whose names appear thereon, (2) the genuineness of the signatures to such petition, (3) the number of qualified voters signing such petition and/or (4) any other matter or inquiry deemed pertinent by the court or judge. (Italics supplied.)

The above quoted section plainly sets out what must be done to attack the validity of the Petition for election filed under Section 4-98.12, a lengthy one enumerating in detail the steps to be followed for setting up and holding a referendum under Title 4 of the Alcoholic Beverage Control Act.

The next section, which permits a legal attack upon the election itself is Section 4-47, quoted below:

> *The regularity or legality of any such election called and held as herein provided* shall be subject to the inquiry, determination and judgment of the circuit or corporation court which entered the order setting forth the results of such election, upon complaint of fifteen or more qualified voters of such county, city or town, *filed within thirty days* after the date of such order, and setting out fully the grounds of contest. Such complaint and the proceedings thereon shall conform as nearly as practicable to the provisions of § 15-53, and the judgment of the court duly entered of record shall be a final determination of the regularity and legality of such election. (Italics supplied.)

This section appears to provide the mechanism for attacking the regularity or legality of the conduct of the election and the returns therefrom and refers to Section 15-53, now repealed and presumably re-enacted as Section 15.1-569, which sets out in detail how the conduct and return of the election itself may be contested and appears to go to the question of whether or not ballots were improperly received or rejected, objections to the actions of the election judges and to the determination of whether or not the Constitution or laws were violated in the conduct of the actual voting procedure on election day.

Complainants in this case appear to feel that they should proceed under Sections 4-47 and 15.1-569 which provide the procedure for attacking the election contest rather than having proceeded under Section 4-45.2 which is required to be done before the election takes place and which provides for referring to a Commissioner in Chancery the question of the genuineness of the signatures and the qualification of the voters who signed the Petition. Actually, no attack is being made in the Complaint as to the conduct of the balloting on November 7, 1972.

Should complainants not have utilized before the election the remedy set out in Section 4-45.2 in which they could have attacked the genuineness of the signatures and qualification of the voters signing the Petition? The Petition lay in the Clerk's Office for public scrutiny for 60 days while the order of publication required by

Section 4-98.12 was running. May they have waited until after the election, and in choosing to attack the election itself, now actually attack the Petition calling for the election? One might assume without careful study of the statutes involved that such a delay in attacking the Petition would not affect their cause. However, I am of the opinion that the remedies for attacking each stage of the referendum are clearly set out in Chapter 4 and each remedy must be used in proper sequence and for its proper purpose. Since the language of Section 4-45.2 presupposes that the question of the validity of the Petition must be submitted to the court before calling the election, an attack upon the validity of the Petition comes too late after the election has been held and after the entry of the Order of November 13, 1972, validating the election. The language of Section 4-47 is not broad enough in my opinion to relate back to cover an allegedly defective Petition filed in accordance with Section 4-98.12. Since the conduct of the election and the return thereof are not being attacked in the Complaint and on the record appear to have been conducted in accordance with law, the stratagem of attacking the Petition by using Sections 4-47 and 15.1-569 cannot now be used.

I might say that since the action filed herein is purely statutory, I believe the Clerk was justified in filing the case on the law side of the docket, even though the remedies set out in the pertinent sections have certain equitable connotations.

Accordingly, the Demurrer filed by the respondent will be sustained.